Michael J. Frevola (MJF 8359)
Marisa Marinelli (MAM 3712)
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
GUNVOR INTERNATIONAL LTD.

**JUDGE BUCHWALD**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUNVOR INTERNATIONAL LTD

    Plaintiff,

    -against-

PETROEAST SINGAPORE PTE. LTD.,

    Defendant.

**07 CV 3523**

07 Civ. _____

**VERIFIED COMPLAINT**

MAY 0 2 2007

---

Plaintiff, Gunvor International Ltd., ("Gunvor"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against Petroeast Singapore PTE Ltd. ("Petroeast"), alleges upon information and belief as follows:

1. This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. At all times material herein, plaintiff Gunvor was and is a business entity organized and existing under the laws of the British Virgin Islands, with a branch registered in

Geneva, Switzerland and maintains a place of business at 14, Quai General Guisan, 1204, Geneva, Switzerland.

3. Upon information and belief, at all times material herein, defendant Petroeast was and is a business entity organized and existing under the laws of Singapore, with a principal place of business located at 7 Temasek Boulevard#33-08 Suntec Tower One, Singapore 038987.

4. On or about November 23, 2005, Gunvor and Petroeast entered into a contract for the sale and delivery of approximately 75,000 metric tons of Russian grade fuel oil, as normally exported from the Baltic (the "Contract"). The Contract was concluded between the Parties' respective brokers by telephone on 23 November, following Gunvor's broker sending a "firm offer" to Petroeast's broker the day before. Once the Contract was concluded, Gunvor's brokers forwarded to Petroeast's broker the contract confirmation annex as Exhibit 1.

5. Under the terms of the Contract, Gunvor was to sell, transport via tanker vessel, and deliver the fuel oil to Petroeast via a ship-to-ship delivery and transfer at Karimun Island, Indonesia, during the period December 15-30, 2005 (both dates included). The period for delivery was narrowed by Gunvor to 18-20 December 2005 (both dates included) in accordance with the Contract.

6. The FOB STS sale and delivery term agreed by the Parties to the Contract required Gunvor and Petroeast each to charter in vessels. In particular, the FOB term, as defined by Incoterms 2000, requires that a seller such as Gunvor deliver to a vessel:

> [T]he seller delivers when the goods pass the ship's rail at the named port of shipment. This means that that the buyer has to bear all costs and risks of loss of or damage to the goods from that point. . . . . This term can be used only for sea or inland waterway transport. If the parties do not intend to deliver the goods across the ship's rail, the FCA term should be used.

Incoterms 2000 (ICC January 1, 2000). In this case, the FOB delivery was to be made to a ship chartered and/or owned by Petroeast, from a ship chartered by Gunvor, as the STS portion of the term required Petroeast to take delivery via a ship-to-ship transfer. Further, and pursuant to the Contract, all quality and quantity measurements, testing and inspection were to be done on board the delivering and receiving vessels.

7. Under the terms of the Contract, disputes between Gunvor and Petroeast are to be submitted to the jurisdiction of the English High Court pursuant to English law.

8. Petroeast breached the Contract by failing to open its letter of credit no later than December 8, 2005. On December 14, 2005, Petroeast still had not opened its letter of credit. Rather, it sent a message to Gunvor denying the existence of the Contract and refusing to be bound by the Contract. Petroeast's actions constituted a repudiatory breach of the Contract. On December 16, 2005, Gunvor accepted Petroeast's repudiatory breach and the Contract came to an end.

9. As a result of Petroeast's breach of the Contract, Gunvor was compelled to resell the fuel oil that was scheduled to be delivered to Petroeast. Gunvor's damages arising from Petroeast's breach of the Contract – including but not limited to the difference in sale price by way of mitigation, the cost of replacement tonnage to carry the cargo and the consequent freight charge, and the cost to Gunvor of the delayed receipt of the price of the cargo in the mitigation sale – presently is quantified as US$3,335,434.05.

10. Under English law, Gunvor also is entitled to receive its interest, expenses and reasonable attorneys' fees for prosecuting its claims to completion, which amount is estimated to be $1,800,504.17, as set forth below:

|  |  |
|---|---|
| Interest: | US$ 800,504.17 (US$3,335,434.05 x 0.08/year x 3 years) |
| Attorneys' Fees/Expenses: | US$1,000,000.00 |
| Total: | US$1,800,504.17 |

11. Gunvor presently is pursuing a claim in the High Court in London against Petroeast in respect of Petroeast's breach of the Contract. Gunvor's claim was issued on July 7, 2006. The Parties' respective cases have now been pleaded, disclosure has been given and a trial date is fixed for February 25, 2008.

12. Petroeast is not found within the Southern District of New York but does have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name (or names) of Petroeast Singapore PTE Ltd., with, upon information and belief, the following financial institutions: Bank of America, N.A.; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Fortis Financial Groups; Banco Popular; Bank of Tokyo-Mitsubishi UFJ Ltd.; China Trust Bank; Great Eastern Bank; Industrial Bank of Korea; Nara Bank; Shin Han Bank; United Orient Bank or any other financial institution within the Southern District of New York.

13. While all disputes arising out of the Contract are to be submitted to the High Court in England, the action herein is submitted in accordance with Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

**WHEREFORE**, Gunvor demands judgment as follows:

1. That process in due form of law according to the practice of this Court in the form of a writ of maritime attachment be issued against bank accounts and other property of Petroeast Singapore PTE Ltd. with the financial institutions noted above in paragraph 12;

2. That Petroeast Singapore PTE Ltd. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. That judgment be entered in favor of Gunvor International Ltd. and against Petroeast Singapore PTE Ltd. in the amount of US$5,135,938.22 (including interest, expenses and attorneys' fees); and,

4. That this Court grant Gunvor International Ltd., such other and further relief which it may deem just and proper.

Dated: New York, New York
May 2, 2007

                                     HOLLAND & KNIGHT LLP

By: _____
Michael J. Frevola (MJF 8359)
Marisa Marinelli (MAM 3714)
195 Broadway
New York, NY 10007-3189
Tel:   (212) 513-3200
Fax:   (212) 385-9010

*Attorneys for Plaintiff*
*Gunvor International Ltd.*

# VERIFICATION

STATE OF NEW YORK        )
                         :ss.:
COUNTY OF NEW YORK       )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for Gunvor International Ltd. ("Gunvor"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Gunvor and corresponded with Gunvor's representatives regarding this matter. I am authorized by Gunvor to make this verification, and the reason for my making it as opposed to an officer or director of Gunvor is that there are none within the jurisdiction of this Honorable Court.

_____
Michael J. Frevola (MJF 8359)

Sworn to before me this
2nd day of May, 2007

_____
Notary Public

RUDY D. GREEN
Notary Public, State of New York
No. 02GR4952723
Qualified in Queens County
Certificate Filed in New York County
Commission Expires February 26, 2010

**EXHIBIT 1**

**Soh Seok Wah**

| | |
|---|---|
| **From:** | Sandrine (Azur Broking) [camilleri@azurbroking.com] |
| **Sent:** | 23 November 2005 21:51 |
| **To:** | PETROEAST; zhangjianwei@petroeast.com.sg |
| **Cc:** | stan.filler@atlanticenergy.uk.com |
| **Subject:** | CONTRACT GUNVOR/PETROEAST - APPROX 75,000 MT - DES STS KARIMUN - 15/30 DECEMBER 2005 - |

**Importance:** High

23RD NOVEMBER, 2005

TO: GUNVOR INTERNATIONAL LTD / ATTN DORON ROLNIK
            ETIENNE CHAPELLE
            MARCO ARDUINI

TO: PETROEAST SINGAPORE PTE LTD

FROM: AZUR BROKING

OUR REF: AB 371
=================

AZUR BROKING SARL, AS BROKERS ONLY, ARE HAPPY TO CONFIRM FOLLOWING
NEW TRANSACTION AS PER TERMS AND CONDITIONS BELOW:

SELLER
------

GUNVOR INTERNATIONAL LTD., TORTOLA,
GENEVA BRANCH
63, RUE DU RHONE,
2ND FLOOR, 1204,
GENEVA,
SWITZERLAND

OPERATIONAL CONTACT:
--------------------

GUNVOR INTERNATIONAL LTD.
NATALIA BULDAKOVA - NATALIA BOROVIK - IVAR KOOL
EMAIL: FUELOPS@TARCONA.EE
SWITCHBOARD: + 372 6110 400
FAX: + 372 6110 401
TLX: (053)7173013
COPY TO:
DORON ROLNIK / HANNA MEREI
EMAIL: DORON@TARCONA.EE / HANNA@TARCONA.EE
TEL: +41 22 718 79 21

17/07/2006

32

FAX: +41 22 718 79 29

BUYER
---
PETROEAST SINGAPORE PTE LTD
1 TEMASEK AVENUE
22-02 MILLENIA TOWER
SINGAPORE
039192

OPERATIONAL CONTACT:
---
SEOK WAH
TEL: 65-6557-6085 (O)
    65-91444361 (HP)
FAX: 65-62386338


QUALITY
---
M-100 RUSSIAN FUEL OIL AS NORMALLY EXPORTED FROM BALTIC MEETING FOLLOWING
GUARANTEES AS PER INDEPENDENT INSPECTOR SGS CERTIFICATE:

```
DENSITY AT 15 DEG C G/CM3.........    0.955   MAX  ASTM D 4052
VISCOSITY, CST AT 50 DEG.......        180    MAX  ASTM D 445
SULPHUR MASS PCT..................     2.5    MAX  ASTM D 4294
WATER PCT BY DISTILLATION PCT VOL.     0.5    MAX  ASTM D 95
ASH MASS PCT......................     0.10   MAX  ASTM D 482
SEDIMENTS BY EXTRACTION MASS PCT..     0.10   MAX  ASTM D 473
POUR POINT DEG C .................     +15    MAX  ASTM D 97
FLASH POINT DEG C.................     +65    MIN  ASTM D 93
P-VALUE...........................     1.9    MIN
XYLENE............................     26/30  MAX
TOLUENE...........................     30     MAX
BROMINE...........................     6      MAX
CCR...............................     9      MAX
```

ALL THESE QUALITIES ARE TO BE CONFIRMED FROM A SHIP'S TANK MULTIPLE
RUNNING COMPOSITE SAMPLE AT LOADPORT KARIMUN ISLAND BY THE
NDEPENDENT INSPECTOR ONBOARD VLCC BY INDEPENDENT INSPECTORS SGS.

UPON RECEIPT OF QUALITY, IF QUALITY IS FOUND TO BE OUT OF GUARANTEED SPECIFICATIONS,
BUYERS WILL HAVE 2 SINGAPORE WORKING HOURS TO REJECT THE CARGO WITHOUT ANY
RECOURSE TO EITHER PARTY.

THE SELLER'S OBLIGATIONS WITH REGARD TO THE QUALITY OF THE PRODUCT SUPPLIED ARE
LIMITED SOLELY TO SUPPLYING PRODUCT WHICH CORRESPONDS WITH THE DESCRIPTION AND ANY
SPECIFICATIONS SET OUT IN THE CONTRACT.

ALL OTHER CONDITIONS, WARRANTIES OR OTHER TERMS WHETHER EXPRESS, IMPLIED OR WHICH
WOULD OTHERWISE BE IMPOSED BY STATUTE, WITH RESPECT TO QUALITY, SATISFACTORY QUALITY,
SUITABILITY OR FITNESS FOR ANY PURPOSE WHATSOEVER OF THE PRODUCT ARE HEREBY
EXCLUDED.

17/07/2006

QUANTITY
---

AS CLOSE AS POSSIBLE TO 75,000 METRIC TON IN SELLER'S OPTION, WITHIN OPERATIONAL TOLERENCE, BASED ON THE AVERAGE OF THE OUTTURN QUANTITY MEASURED ON BOARD THE MOTHER SHIP MT'IRAN DARAB' AND QUANTITY RECEIVED, CORRECTED BY VEF, ON BUYERS' DAUGHTER'S SHIP.


DELIVERY/NOMINATION
---

IN ONE (1) LOT, DELIVERED EX SHIP MT 'IRAN DARAB' TO ONE SAFE SHIP TO SHIP LOCATION, KARIMUN ISLAND, INDONESIA, DURING THE PERIOD 15TH TO 30TH DECEMBER, 2005 (BOTH DATES INCLUDED).

SELLERS TO NARROW THE DELIVERY WINDOW TO A THREE (3) DAYS PERIOD LATEST EIGHTEEN (18) CALENDAR DAYS PRIOR THE FIRST DAY OF THE 3 DAYS LAYCAN.

STS COSTS TO BE FOR SELLER'S ACCOUNT.

DELIVERING VESSEL MT'IRAN DARAB' HAS ALREADY BEEN ACCEPTED BY BUYERS. ANY SUBSTITUTION OF RECEIVING/DELIVERING VESSEL TO BE ACCEPTABLE TO SELLERS/BUYERS AND SUCH ACCEPTANCE NOT TO BE UNREASONABLY WITHELD.

BUYER SHALL BE THE IMPORTER OF RECORD AND IS TO ARRANGE FOR CUSTOMS CLEARANCE OF THE CARGO AT DISCHARGE PORT. ALL TAXES, DUTIES, LEVIES OF WHATSOEVER NATURE ATTACHING TO THE GOODS AFTER THE OIL PASSES THE VESSEL'S PERMANENT FLANGE CONNECTION AT LOAD PORT, SHALL BE BORNE BY THE BUYER AND SETTLED DIRECTLY BY THEM.


PRICE
---

PRICE FOR THE PRODUCT IS IN US DOLLARS PER METRIC TON,
DELIVERED EX SHIP MT 'IRAN DARAB' TO ONE SAFE SHIP TO SHIP LOCATION, KARIMUN ISLAND, INDONESIA, BASED ON THE AVERAGE OF THE OUTTURN QUANTITY MEASURED ON BOARD THE MOTHER SHIP MT'IRAN DARAB' AND QUANTITY RECEIVED, CORRECTED BY VEF, ON BUYERS' DAUGHTER'S SHIP, AT STS POINT ON BUYERS SHIPAND SHALL BE CALCULATED AS FOLLOWS:

THE MEAN QUOTATIONS (AVERAGE OF HIGH AND LOW) FOR 'HSFO 180 CST'
UNDER THE HEADING 'CARGO FOB SINGAPORE', PLUS A PREMIUM OF TEN DOLLARS (+10.00 USD) PER METRIC TON, ALL AS PUBLISHED IN ASIA/ARAB GULF MARKETSCAN DURING THE PERIOD 01ST TO 31ST JANUARY, 2006 (BOTH DATE INCLUDED), DELIVERED EX SHIP MT 'IRAN DARAB' TO ONE SAFE SHIP TO SHIP LOCATION, KARIMUN ISLAND, INDONESIA.


PAYMENT
---

IN US DOLLARS IN FULL WITHOUT DEDUCTIONS, DISCOUNT, OFFSET OR COUNTERCLAIM BY TELEGRAPHIC TRANSFER TO SELLER'S NOMINATED BANK ACCOUNT. PAYABLE LATEST FIFTEEN (15) CALENDAR DAYS FROM BILL OF LADING DATE OF BUYER'S DAUGHTER VESSEL, AGAINST COMMERCIAL INVOICE (TELEX/FAX IS ACCEPTABLE) AND USUAL SHIPPING DOCUMENTS, OR IN CASE TEMPORARILY MISSING DOCUMENTS AGAINST COMMERCIAL INVOICE (TELEX/FAX ACCEPTABLE) AND SELLER'S BANK COUNTERSIGNED LETTER OF INDEMNITY (TELEX/FAX ACCEPTABLE) SUCH BANK COUNTERSIGNED LOI WORDING TO BE AGREED WITH THE BUYER.


17/07/2006

WHERE THE FINAL PRICING AND OR THE AVAILABILITY OF THE QUANTITY LOADED IS NOT YET KNOWN THE SELLER MAY ISSUE AND THE BUYER SHALL MAKE PAYMENT AGAINST A PROVISIONAL INVOICE COVERING 100 PCT OF THE CARGO VALUE, PLUS ORIGINAL USUAL SHIPPING DOCUMENTS OR PROVISIONAL BANK COUNTERSIGNED LOI.

THE PROVISIONAL PRICE SHALL BE BASED ON: THE QUOTATION PUBLISHED ON THE N.O.R. DATE OF THE BUYER'S DAUGHTER VESSEL, PLUS THE IMMEDIATELY PREVIOUS PUBLISHED QUOTATION AND THE IMMEDIATELY FOLLOWING PUBLISHED QUOTATION.

IF PLATTS IS NOT PUBLISHED ON THE N.O.R. DATE, THEN THE
IMMEDIATELY PRECEDING PUBLISHED QUOTATIONS AND THE IMMEDIATELY FOLLOWING PUBLISHED QUOTATION WILL APPLY FOR PROVISIONAL PRICING.

PAYMENT OF ANY BALANCE DUE BY THE BUYER TO THE SELLER OR ANY REFUND DUE BY THE SELLER TO THE BUYER SHALL BE MADE PROMPTLY (WITHIN 2 NEW YORK WORKING DAYS) UPON RECEIPT OF THE SELLER'S FINAL INVOICE AND FINAL LOI IF APPLICABLE WHICH SHALL BE SENT AFTER THE LAST PUBLISHED QUOTATION.

IN CASE OF INCORRECT PAYMENT AND/OR PARTIAL PAYMENT AND/OR DELAY IN PAYMENT, BUYER WILL PAY INTERESTS TO SELLER FOR EACH DAY OF DELAY AT THE RATE PER ANNUM TO BE EQUAL TO THE ONE MONTH OF THE LONDON INTERBANK OFFERED RATE (LIBOR) AS DEFINED BY THE BBA (BRITISH BANKS ASSOCIATION) PUBLISHED AT 11:00 A.M. PLUS 2 (TWO) PER CENT ON THE DAY WHICH IS TWO LIBOR BANKING DAYS PRIOR TO THE COMMENCEMENT OF THE INTEREST PERIOD OR AT THE ACTUAL COST, WHICHEVER HIGHER.

BUYER TO OPEN AT HIS OWN EXPENSE A STAND-BY LETTER OF CREDIT TO BE ISSUED BY A FIRST CLASS WESTERN BANK AND IN A FORMAT BOTH TO BE ACCEPTABLE TO SELLER LATEST BY TEN (10) CALENDAR DAYS PRIOR FIRST DAY OF THE THREE DAYS DELIVERY WINDOW.


INSURANCE
———

FIRST CLASS WESTERN, FULLY TRANSFERABLE INSURANCE, COVERING MINIMUM INGOSTRAKH TERMS, INCLUDING CONTAMINATION AND SHORE TANK TO SHORE TANK CLAUSES, COVERING 110 PCT OF THE EX SHIP CARGO VALUE,
INCLUDING LOSSES IN EXCESS OF 0.5 PCT OF B/L QUANTITY AND
CONTAMINATION WITHOUT LIMITATION.
BUYERS TO FOLLOW INSURANCE COMPANY REQUIREMENTS
FOR OUTTURN INSPECTION FOR INSURANCE PURPOSES.

IF THE CONDITIONS CHANGE AFTER THE CONTRACT HAS BEEN AGREED, ALL ADDITIONAL INSURANCE PREMIUM ON THE CARGO OR ON THE VESSEL TO BE FOR BUYER'S ACCOUNT.

THE SELLER RESERVES THE RIGHT TO REFUSE AT ANY TIME TO DIRECT ANY VESSEL TO PROCEED IN WATERS INVOLVING A BREACH OF INSTITUTE WARRANTIES, RISK TO ITS SAFETY, RISK OF ICE DAMAGE, RISK OR WAR.



LAYTIME
———

36 HOURS PLUS 6 HOURS N O R - S H I N C UNLESS SOONER BERTHED.

LAYTIME STARTS ON THE DAUGHTER VESSEL UPON TENDERING OF NOR (OR IF THE DAUGHTER VESSEL TENDERS NOR PRIOR TO THE 1ST DAY OF THE 3 DAY LAYCAN AT 0000 ON THE 1ST DAY OF THE LAYCAN). IF THE DAUGHTER VESSEL TENDERS NOR AFTER THE 3 DAY LAYCAN LAYTIME STARTS

17/07/2006

UPON COMMENCEMENT OF BERTHING OPERATIONS.

## DEMURRAGE

AS PER CHARTER PARTY RATE, TERMS, CONDITIONS AND EXCEPTIONS FOR TIME USED IN EXCESS OF LAYTIME HEREABOVE.

ANY VALID CLAIM(S) SHALL BE PAYABLE WITHIN 30 DAYS FROM THE DATE BUYER IS IN RECEIPT OF SELLER'S CLAIM.

SELLER'S CLAIM SHALL BE PRESENTED WITHIN 90 DAYS FROM COMPLETION OF DISCHARGE AND THEREAFTER UNDISPUTABLE DEMURRAGE SHALL BE SETTLED WITHIN 30 DAYS FROM RECEIPT OF SAID CLAIM, WITH FINAL SETTLEMENT TO FOLLOW SOONEST.

## DETERMINATION OF QUALITY AND QUANTITY

QUALITY AS ESTABLISHED BY MUTUALLY AGREED INDEPENDENT INSPECTOR SGS BASED ON SHIP'S TANK COMPOSITE SAMPLE OF MT'IRAN DARAB'/SUB UPON ARRIVAL AT STS POINT IN KARIMUN ISLAND, TO BE FINAL AND BINDING FOR BOTH PARTIES SAVE FOR FRAUD OR MANIFEST ERROR.

QUANTITY AS PER THE AVERAGE OF THE OUTTURN QUANTITY MEASURED ON BOARD THE MOTHER SHIP MT'IRAN DARAB' AND QUANTITY RECEIVED, CORRECTED BY VEF, ON BUYERS' DAUGHTER'S SHIP, ESTABLISHED BY INSTALLATION AT
STS POINT IN KARIMUN ISLAND AND WITNESSED BY MUTUALLY AGREED
INDEPENDENT INSPECTOR SGS.

INSPECTION EXPENSES TO BE SHARED 50/50 BUYER/SELLER.

## TITLE AND RISK

THE RISK OF LOSS OR OF DAMAGE TO AND TITLE TO THE PRODUCT
WILL PASS FROM THE SELLER TO THE BUYER AT THE TIME THE PRODUCT PASSES
THE VESSEL'S CONNECTIONS OF THE DELIVERING AND RECEIVING HOSES OF
BOTH THE MOTHER VESSEL AND THE RECEIVING HOSE VESSEL.

## JURISDICTION

IN THE CASE OF A DISPUTE EACH PARTY AGREES TO SUBMIT TO THE EXCLUSIVE JURIDICTION OF THE ENGLISH HIGH COURT.

## GOVERNING LAW

THIS CONTRACT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF ENGLAND WITHOUT REFERENCE TO ANY CONFLICT OF LAW RULES NOT INCLUDING THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS.

17/07/2006

WARRANTY
---
THERE ARE NO WARRANTIES, EXPRESSED OR IMPLIED OF SATISFACTORY QUALITY, FITNESS OR PURPOSE, DURABILITY, MERCHANTABILITY OR OTHERWISE FOR THE PRODUCT SOLD HEREUNDER, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF SATISFACTORY QUALITY WHICH ARISES UNDER SECTION 14 OF THE SALE OF GOODS ACT 1979 AS AMENDED FOR THE PRODUCT SOLD HEREUNDER EXCPT THAT IT SHALL MEET THE QUALITY SPECIFIED ABOVE AT THE LOADPORT.

FORCE MAJEURE
---
NEITHER PARTY TO BE LIABLE FOR LOSS OR DAMAGE DUE TO ANY CIRCUMSTANCES BEYOND THE AFFECTED PARTY'S CONTROL WHICH PREVENT THE COMPLETE OR PARTIAL FULFILLMENT BY THE AFFECTED PARTY'S OF ITS OBLIGATIONS UNDER THIS CONTRACT (EXCEPT FAILURE TO PAY ANY SUM WHICH HAS BECOME DUE UNDER THE PROVISIONS HEREOF), INCLUDING FIRE, ICE CONDITIONS, STRIKES OR ANY ACTS OF THE ELEMENTS, WAR MILITARYU OPERATIONS OF ANY CHARACTER, BLOCKADE, PROHIBITIONS OF EXPORT OR IMPORT OR ANY OTHER CIRCUMSTANCES BEYOND THE CONTROL OF THE PARTY AFFECTED THAT HAVE ARISEN AFTER THE CONCLUSION OF THE CONTRACT. THE AFFECTED PARTY SHALL IMMEDIATLY ADVISE THE OTHER PARTY REGARDING THE BEGINNING AND THE TERMINATION OF THE CIRCUMSTANCES WHICH PREVENT THE FULFILLMENT OF ITS OBLIGATIONS. NOTHING HEREIN SHALL AFFECT EITHER PARTY'S RIGHTS OR OBLIGATIONS IN RESPECT OF LAYTIME OF LAYDAYS OR DEMURRAGE.

GENERAL TERMS AND CONDITIONS
---
WHERE NOT IN CONFLICT WITH THE ABOVE, INCOTERMS 2000 FOR D.E.S.
DELIVERIES SHALL APPLY TO THIS TRANSACTION .

OPERATIONAL CONTACT FOR THIS CONTRACT :
---
SANDRINE CAMILLERI/TSERING CHOEDON
TEL    33 4 97 21 41 42
FAX    33 4 97 21 41 40
TELEX  970119
E-MAIL: CAMILLERI?AZURBROKING.COM
E-MAIL: TSERING?AZURBROKING.COM

WE ARE PLEASED TO HAVE CONCLUDED THIS TRANSACTION WITH YOUR ESTEEMED COMPANY FOR WHICH WE THANK YOU.

BEST REGARDS,

AZUR BROKING

17/07/2006